IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LEONARD JONES,

                        Plaintiff,                       OPINION and ORDER

              v.                                 08-cv-615-bbc

JIM SMITH, Corrections Officer, III,

                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In this prisoner civil rights lawsuit, plaintiff Leonard Jones contends that defendant Jim Smith mistreated him in retaliation for plaintiff's speaking out against the Iraq war and later for his defending himself against a false conduct report. The case is before the court on defendant's motion for summary judgment, dkt. #19. That motion will be granted with respect to plaintiff's claim that defendant mistreated him in retaliation for plaintiff's defending himself against a false conduct report. However, the motion will be denied with respect to plaintiff's claim that defendant mistreated plaintiff in retaliation for his speaking out against the Iraq war.

In this case, the facts are almost entirely in dispute. Plaintiff avers that the incidents in question occurred one way and defendant avers that he does not recall most of the incidents, but that he would not have behaved in the way plaintiff says he did. However,

at this stage, the question is whether a reasonable jury could return a verdict for plaintiff on his retaliation claim, viewing all the facts and taking all inferences from those facts in a light most favorable to plaintiff.  Schuster v. Lucent Technologies, Inc., 327 F.3d 569, 573 (7th Cir. 2003).  Therefore, for the purpose of deciding this summary judgment motion, I consider only those facts that plaintiff has adduced, which are as follows.

FACTS

On November 10, 2006, plaintiff and defendant had a conversation about politics. During the conversation, plaintiff voiced his opinion that engaging in warfare with Iraq was not the best course of action.  In response, defendant told plaintiff that he would show plaintiff just how effective warfare could be.  At the time of the conversation, defendant had never taken adverse actions against plaintiff for any rule violation or reported plaintiff to defendant's superiors for any bad behavior.

Within the next four days, defendant twice ordered plaintiff to rake leaves and when plaintiff refused because he was injured, defendant threatened to report him.  Defendant relented only after he called staff from the Health Services Unit, who determined that plaintiff should be on a no-work medical restriction.  At that time, defendant told plaintiff that he had been placed on a no-work medical restriction, but refused to tell plaintiff exactly what leisure activities were prohibited by the status, instead simply warning plaintiff that if

2

he ran afoul of the restriction, defendant would "arrange" to have plaintiff put in segregation.  (Defendant is not authorized to put prisoners in segregation directly, but can bring about such a result by reporting misconduct to his superiors.)

On November 14, 2006, defendant accused plaintiff of being in violation of his medical restriction and a sanction called "loss of recreation" by playing chess at school.  At the time, plaintiff was not aware that his medical restriction prevented him from playing chess (he had not received a copy of the restriction and defendant had refused to give him details).  Moreover, plaintiff was not under a loss of recreation sanction.  Nonetheless, defendant ordered plaintiff to read aloud in front of other prisoners a section of the Oakhill rule book entitled "Loss of Recreation."  In addition, defendant called a lieutenant Alberts and urged him to place plaintiff in temporary lock-up and prepared a conduct report in which he alleged falsely that plaintiff had disobeyed his orders.

Plaintiff defended the conduct report and, on December 5, 2006, it was dismissed.  In the meantime, he remained in temporary lock-up.  On December 5, 2006, plaintiff was released from temporary lock-up and assigned to the same housing unit he had had before.  Once plaintiff returned from the housing unit, his conflicts with defendant continued.  From December 5 to December 7, 2006, defendant:

- criticized plaintiff's decision not to call defendant as a witness during the hearing on the conduct report;
- ordered plaintiff to take another prisoner's linen from the floor and use it to

make his bed, telling him that he would not be provided clean linen;
- assigned plaintiff a cell with a different cell mate;
- ordered plaintiff to walk in the cold to a separate building to get a new identification card even though plaintiff's card was still functional;
- "mocked" plaintiff for having lost weight while in temporary lock-up;
- engaged plaintiff in irrelevant conversations and ordered plaintiff to remain present during the conversations;
- told plaintiff that he was depressed and ordered him to walk over to consult with lieutenant Meicher, who is not a psychologist;
- showed plaintiff photographs of strangers and told them they were plaintiff's family members;
- gave plaintiff a warning for failing to sign out even though plaintiff had signed out on a sign-out sheet that defendant had provided him; and
- ordered plaintiff to open his shirt to check for sweat;

On December 15, 2006, defendant told plaintiff that defendant was a former police officer "with connections" and that if plaintiff attempted to sue defendant, defendant would seek to get his police friends make false allegations against plaintiff.

(Plaintiff contends that defendant engaged in other adverse activities. For example, he avers that Harry Brown told plaintiff that defendant was telling other prisoners that plaintiff had snitched on them for gambling and smoking cigarettes, placed him in a cell with a "dangerous" convicted murderer, "falsely accused" plaintiff of being in library in violation of policy and arranged a search of plaintiff's room without cause. These averments are inadmissible because they are too vague, lack foundation or rely on hearsay. Therefore, I have disregarded these facts. In addition, I have disregarded plaintiff's testimony regarding the several inmate complaints he filed around this time period. The record shows that the

4

first of these complaints was filed around December 6, 2006 and there is no suggestion that defendant knew about these complaints, particularly around the time he allegedly mistreated plaintiff.   The fact that plaintiff filed those complaints is therefore irrelevant to his retaliation claim.)

OPINION

To proceed to trial on his First Amendment retaliation claim, plaintiff must adduce sufficient facts to allow a reasonable jury to find that (1) plaintiff engaged in activity protected by the First Amendment; (2) defendant caused plaintiff to suffer a deprivation that would likely deter a person of ordinary firmness from engaging in First Amendment activity in the future; and (3) the protected activity was at least one of the reasons that defendant decided to take the retaliatory action.  Bridges v. Gilbert, 557 F.3d 541, 546, 552 (7th Cir. 2009) (citations omitted); Hoskins v. Lenear, 395 F.3d 372, 375 (7th Cir. 2005).  (Although it is a defense to a retaliation claim to show that the defendant would have taken the same action even if the plaintiff had not engaged in the protected conduct, Mt. Healthy Board of Education v. Doyle, 429 U.S. 274, 287 (1977), defendant makes no such argument.)

Plaintiff meets his burden as to one of his claims, but not the other.  He identifies two protected activities that he performed: he made a statement against the use of warfare in Iraq, protected as free speech, and he defended against a conduct report, protected as a form

5

of petitioning the government for redress of grievances. Cf. Walker v. Thompson, 288 F.3d 1005, 1009 (7th Cir. 2002) (prisoners entitled to utilize available grievance procedures without threat of recrimination). Plaintiff lists a slew of offenses by defendant, from pestering him about leaves to submitting a false conduct report that was dismissed only after plaintiff had been in temporary lock-up for nearly a month. Alone, perhaps only one of these offenses would be sufficient to deter a person of ordinary firmness (causing him to be placed in temporary lock-up under false pretenses). However, the proper question is whether defendant's collective activity, as a whole, would deter a person of ordinary firmness. Bridges, 557 F.3d at 552 (holding that, collectively, allegations of several petty offenses allow inference to be drawn that person of ordinary firmness would be deterred). Together, all of defendant's alleged offenses would deter a person of ordinary firmness from engaging in protected activity. Even the alleged mistreatment that occurred after plaintiff defended himself against the conduct report (which is all that could be considered with respect to plaintiff's claim involving that protected activity) would be a sufficient deterrent to a person of ordinary firmness.

Plaintiff's two claims come apart with regard to the last element of retaliation: whether either protected activity was a reason for the alleged mistreatment. If the jury accepts plaintiff's version of the story, it could reasonably infer that plaintiff's statement against the war was a reason for defendant's alleged mistreatment of plaintiff. Plaintiff avers

6

that defendant had never caused him problems before he made the statement and that defendant stated in response to the statement that defendant would show plaintiff how effective warfare could be.  A reasonable jury could infer that defendant's ominous statement was a warning that plaintiff would "pay" for his voice of dissent, a promise that defendant carried out when he started behaving as though he were out to get plaintiff.  Plaintiff has met his burden with regards to his claim that defendant mistreated him in retaliation for his speaking out against the war; therefore, I will deny defendant's motion for summary judgment as to this claim.

However, the evidence is not sufficient to allow a reasonable jury to draw such an inference with respect to plaintiff's other protected activity, defending against the conduct report.  Plaintiff avers that defendant started mistreating plaintiff again on December 5, 2006, after plaintiff was successful in defending against the conduct report.  However, nothing but happenstance ties the timing of the mistreatment to his defense against the conduct report.  The closest plaintiff comes to relating these two matters is his testimony that defendant criticized plaintiff for failing to call defendant as a witness during his defense.  However, this fact suggests only that defendant disagreed with plaintiff's *method* of defending against the conduct report, not with the fact that plaintiff defended at all.  Moreover, according to plaintiff, at the time defendant's mistreatment started up again on December 5, 2006, defendant still had it out for plaintiff for his earlier protected speech.  December

7

5, 2006 was just the date plaintiff was returned to the housing unit where defendant could continue his mistreatment.  In short, the facts in the record would not allow a reasonable jury to infer that defendant mistreated plaintiff in retaliation for his defending against a conduct report.  Therefore, as to this claim, I will grant defendant's motion for summary judgment.


ORDER

IT IS ORDERED that defendant Jim Smith's motion for summary judgment is GRANTED as to plaintiff Leonard Jones's claim that defendant retaliated against him for defending against a conduct report and DENIED as to plaintiff's claim that defendant retaliated against him for speaking out against the Iraq war.

Entered this 17th day of June, 2009.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge

8